UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| | |
|---|---|
| **CASE NO.:** CV 15-02044 SJO (ASx) | **DATE:** June 10, 2015 |
| **TITLE:** Dallas and Lashmi, Inc. et al. v. 7-Eleven, Inc. | |

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                  Not Present
Courtroom Clerk                                   Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**      **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                       Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT 7-ELEVEN, INC.'S MOTION TO DISMISS COMPLAINT** [Docket No. 12]

This matter comes before the Court on Defendant 7-Eleven, Inc.'s ("Defendant" or "7-Eleven") Motion to Dismiss Complaint ("Motion"), filed May 5, 2015.[1] Plaintiffs Dallas and Lashmi, Inc. (the "Corporation"), Mohiuddin Chowdhury ("Mr. Chowdhury"), and Shamima Chowdhury ("Mrs. Chowdhury") (collectively, "Plaintiffs") filed an opposition to the Motion ("Opposition") on May 18, 2015, to which Defendant filed a Reply on May 22, 2015. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for June 8, 2015. *See* Fed. R. Civ. P. 78(b). For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the Motion.

I.      FACTUAL AND PROCEDURAL HISTORY

Plaintiffs allege the following. In 2004, Mr. and Mrs. Chowdhury (together, the "Chowdhurys") purchased a commercial parcel of real property of a "strip mall" nature located at 4111 Venice Blvd., Los Angeles, CA 90019 (the "Property"). (Compl. ¶ 14, ECF No. 1.) In 2007, through the Corporation, the Chowdhurys entered into a franchise agreement with Defendant to own and operate a 7-Eleven store ("Store") at the Property. (Compl. ¶¶ 1, 15; Ex. 1 ("Franchise Agreement"), ECF No. 1-1.) As part of operating the Store, Plaintiffs obtained an Alcoholic Beverage License ("ABL" or "License"). (Compl. ¶ 16; Ex. 2, ECF No. 1-2.) Plaintiffs also stocked the Store with as much as $50,000 worth of inventory. (Compl. ¶ 17.)

Over the next several years, Plaintiffs spent more than $200,000 improving the Store, and in 2011, the Store generated more than $1,500,000 in annual gross revenue. (Compl. ¶ 18.) The same year, however, Plaintiffs fell behind on their mortgage payments and the bank foreclosed

---

[1] Defendant Joseph Depinto ("Depinto"), 7-Eleven, Inc.'s Chief Executive Officer ("CEO"), filed a separate motion to dismiss on June 1, 2015. (ECF No. 21.) The Court shall address Depinto's motion in a separate order.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 15-02044 SJO (ASx)   **DATE:** June 10, 2015

on the Property. (Compl. ¶¶ 19-20.) A new landlord, Jeff Kern ("Kern"), purchased the Property in fall 2011. (Compl. ¶ 20.)

On information and belief, Plaintiffs allege that they were attempting to stay in their Store and were negotiating new lease terms when Defendant began to negotiate with Kern for a lease for a new franchisee in the same location. (Compl. ¶¶ 21, 24.) On November 27, 2011, Plaintiffs were evicted by Kern and locked out of their store. (Compl. ¶ 23.) In December 2011, Defendant's Director of Real Estate, Michael Austin ("Austin"), instructed Mr. Chowdhury to stop attempting to negotiate a new lease with Kern and informed Mr. Chowdhury that Defendant would obtain a new lease from Kern and then allow Plaintiffs to operate the Store as a 50% partner. (Compl. ¶ 25.) Two weeks later, however, Austin informed the Chowdhurys that: (1) they did not qualify as a corporate store franchisee; (2) Defendant would not approve a 50/50 operation; and (3) another individual, Sean John ("John") had been approved as a franchisee. (Compl. ¶ 26.) Austin and Defendant's Marketing Manager, Joe Anderson ("Anderson"), then informed the Chowdhurys that they could be paid $300,000 for the Store's "goodwill" and ABL. (Compl. ¶ 27.) Austin and Anderson also told Plaintiffs that escrow would not need to be opened to transfer the "goodwill" and ABL to John because Defendant would pay the Chowdhurys directly with a check. (Compl. ¶ 28.) Plaintiffs allege that Austin and Anderson's representations induced Plaintiffs to: (1) stop attempting to negotiate a new lease with Kern; and (2) transfer their goodwill and ABL to John without going through an escrow. (Compl. ¶ 29.)

In December 2011, Nick Bohala ("Bohala"), a Vice President of the Franchise Owners Association, arranged a face to face meeting between John and the Chowdhurys. (Compl. ¶ 30.) As part of the transfer of the goodwill and ABL, and at the request of Austin, Mr. Chowdhury executed a power of attorney form that gave Defendant the power to transfer the franchise and ABL to Defendant. (Compl. ¶ 32; Ex. 3, ECF No. 1-3.) One of Defendant's field representatives assisted the Chowdhurys with executing numerous real estate documents transferring the goodwill and License, but did not give Plaintiffs copies of said documents. (Compl. ¶ 32.) The transfer of Plaintiffs' former franchise, goodwill, and license was completed in January 2012. (Compl. ¶ 33.) On information and belief, John paid Defendant $400,000 as a franchise fee, of which $300,000 was to be paid to Plaintiffs. (Compl. ¶¶ 31, 33.)

In January 2012, Defendant sent Plaintiffs a financial spreadsheet in an attempt to justify refusing to pay Plaintiffs any money for the transfer of their store. (Compl. ¶ 35; Ex. 4 ("Spreadsheet"), ECF No. 1-4.) According to Plaintiffs, Defendant also erroneously asserted that Plaintiffs owed it $218,000 for the costs of Store operation, including maintenance of premises, security, etc. (*See generally* Spreadsheet.)

On January 19, 2013, Plaintiffs signed a promissory note agreeing that Plaintiffs would repay Defendant approximately $17,000 with interest for unpaid back rents that Defendant had paid to Kern. (Compl. ¶ 36; Ex. 5 ("Note") ¶ 1, ECF No. 1-5.) On September 20, 2013, despite making substantial payments on the Note, Plaintiffs were served with an Abstract of Judgment from Kern's

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 15-02044 SJO (ASx)</u>  DATE: <u>June 10, 2015</u>

attorney for unpaid back rents in the amount of $17,640. (Compl. ¶ 37; Ex. 6, ECF No. 1-6.) On information and belief, Plaintiffs assert that Defendant never paid back rents to Kern, but still attempted to collect the amount from Plaintiffs. (Compl. ¶ 37.) Over the next several months, Plaintiffs wrote numerous letters and emails to Defendant, and to its CEO, Depinto, but did not receive an answer. (Compl. ¶ 38.) Defendant never sent Plaintiffs a check for $300,000. (*See* Compl. ¶¶ 35, 38.)

Plaintiffs filed the instant lawsuit on March 19, 2015. (*See generally* Compl.) In the Complaint, Plaintiffs purport to bring two causes of action for: (1) several violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Compl. ¶¶ 44-68); and (2) racial discrimination in violation of 42 U.S.C. § 1981 and Cal. Civ. Code §§ 51 *et seq*. However, Plaintiffs' purported UCL claim is actually comprised of five sub-claims for: (1) fraud (Compl. ¶¶ 45-50); (2) conversion (Compl. ¶¶ 55-59); (3) breach of oral contract (Compl. ¶¶ 51-54); (4) negligent interference with prospective economic advantage (Compl. ¶¶ 60-65); and (5) breach of the covenant of good faith and fair dealing (Compl. ¶¶ 66-68), which allegedly give rise to UCL liability.[2]

In the instant Motion, Defendant seeks to dismiss each of the causes of action included in Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Rule 12") and Federal Rules of Civil Procedure 9(b) ("Rule 9"). (*See generally* Mot., ECF No. 12.)

II. <u>DISCUSSION</u>

    A. <u>Legal Standards for Defendant's Motion to Dismiss</u>

        1. <u>Rule 9</u>

One of the sub-claims alleged as part of Plaintiffs' UCL claim is fraud. (Compl. ¶¶ 45-50.) In California, the elements of fraud are (1) false representation, (2) knowledge of the falsity, (3) intent to defraud, (4) justifiable reliance, and (5) damages. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (citing *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996)). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud," even when the word "fraud" does not appear in the complaint. *Vess*, 317 F.3d at 1105.

---

[2] Defendant maintains that Plaintiffs couched their sub-claims as part of a UCL claim in order to avoid the applicable statutes of limitations as to each claim. (Mot. 2 n.2.) However, Defendant's Motion attacks each of Plaintiffs' claims on the merits without elaborating on this point. (*See generally* Mot.) Accordingly, the Court's analysis, like Defendant's Motion, addresses whether Defendants have shown that Plaintiffs' claims fail under Rule 9 and Rule 12(b)(6).

CASE NO.: CV 15-02044 SJO (ASx)         DATE: June 10, 2015

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, Rule 9(b) imposes a "heightened pleading standard" for fraud claims, so that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1104, 1106 (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). "In the context of a fraud suit involving multiple defendants,[3] a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1070 (E.D. Cal. 2012) (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)) (quotations and original formatting omitted). By contrast, "[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess*, 317 F.3d at 1105. The purpose of Rule 9(b)'s heightened standard is to: (1) give notice to defendants; (2) protect defendants from unwarranted damage to their reputations; and (3) guard against the danger of "strike suits" designed to increase settlement value by manipulating the discovery process. *Fitzer v. Sec. Dynamics Techs., Inc.*, 119 F. Supp. 2d 12, 17 (D. Mass. 2000).

      2.     Rule 12(b)(6)

Rule 12, which provides for dismissal of a plaintiff's cause of action for "failure to state a claim on which relief can be granted," *see* Fed. R. Civ. P. 12(b)(6), must be read in conjunction with Federal Rule Civil Procedure 8(a) ("Rule 8"). *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Rule 8 requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). Although the pleader is not required to plead "detailed factual allegations" under Rule 8, this standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Pleadings that contain nothing more than legal conclusions or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* (citation and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where a complaint pleads sufficient facts "to raise a right to relief above the speculative level," a court may not dismiss the complaint under 12(b)(6). *See Twombly*, 550 U.S. at 555; *see, e.g., Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1196 (C.D. Cal. 2011) (finding that allegations that defendants foreclosed on plaintiff's property unlawfully, without authority, and through fraudulent misrepresentations were sufficient at the pleadings stage to establish that plaintiff suffered injury in fact and monetary loss under the UCL).

Further, for allegations based upon "information and belief" to be facially plausible, either the facts on which the allegations are based must be "peculiarly within the possession and control of the

---

   [3] Plaintiffs' Complaint names 7-Eleven, Depinto, and Does 1-100 as Defendants.

defendant," or the belief must be "based on factual information that makes the inference of culpability plausible." *Vavak v. Abbott Labs., Inc.*, No. CV 10-01995 JVS, 2011 WL 10550065, at *2 (C.D. Cal. June 17, 2011) (quoting *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)). Factual allegations based on "information and belief" containing nothing more than a "rote recitation" of each claim's elements are insufficient. *See Simonyan v. Ally Fin., Inc.*, No. CV 12-08495 JFW, 2013 WL 45453, at *2 (C.D. Cal. Jan. 3, 2013).

    B.    Plaintiffs' Claims

        1.    UCL Claim

The UCL prohibits "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because . . . section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Boschma v. Home Loan Ctr., Inc.,* 198 Cal. App. 4th 230, 252 (2011) (citation and quotation marks omitted). The UCL protects competitors as well as consumers. *See, e.g., Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 168-69 (1999); *Tippett v. Tetrich*, 37 Cal. App. 4th 1517, 1536 (1995),[4] *abrogated on other grounds by Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 171 (2000).

The California courts have established at least three tests for determining whether a business practice is unfair. First, a business practice may be "unfair" under the UCL, if: "(1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." *Boschma,* 198 Cal. App. 4th at 252 (citing *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403-05 (2006)). A second group of cases has held that a UCL claim must be "tethered to specific constitutional, statutory, or regulatory provisions." *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1261 (2006) (citing *Scripps Clinic v. Super. Ct*, 108 Cal. App. 4th 917, 939 (2003); *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 853 (2002)). A third group maintains that unfair business practices refer to conduct that is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to [competitors]" and therefore "requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Bardin*, 136 Cal. App. 4th at 1260 (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718-19 (2001)). Finally, "some courts, in reviewing a pleading, apply all three tests." *Boschma*, 198 Cal. App. 4th at 252 (citing *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256-57 (2010)).

---

    [4] Plaintiffs cite this case in their Opposition (*see* Opp'n 2, ECF No. 17), but this citation and others are incorrect. Plaintiffs are admonished to be mindful of providing correct citations in all future pleadings before the Court.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 15-02044 SJO (ASx)          DATE:  June 10, 2015

      a.      <u>Fraud</u>

Defendant contends that Plaintiffs have failed to allege a UCL claim under the fraud prong because Plaintiffs' fraud-related allegations fail to meet the heightened pleading requirements of Rule 9(b).  (Mot. 3-4.)  Defendant also relies on *Icasiano v. Allstate Ins. Co.*, 103 F. Supp. 2d 1187, 1191-92 (N.D. Cal. 2000), to support its position that Plaintiffs have failed to adequately plead with specificity the circumstances of the alleged promissory fraud.  (Mot. 4.)

A fraud claim "must set forth 'what is false or misleading about a statement, and why it is false.'" *Backhaut v. Apple, Inc.*, No. CV 14-02285 LHK, 2014 WL 6601776, at *3 (N.D. Cal. Nov. 19, 2014) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).  Further, "claims sounding in fraud must allege an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Backhaut*, 2014 WL 6601776, at *3 (citation and quotation marks omitted); *see also Vess*, 317 F.3d at 1106.  Promissory fraud is a "subspecies" of a fraud action based on a promise made without the intention to perform it, *see Lazar v. Super. Ct.*, 12 Cal. 4th 631, 637 (1996), and "is cognizable when a party enters into an agreement without intending to be bound by its terms." *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (citing *Locke v. Warner Bros., Inc.*, 57 Cal. App. 4th 354, 367-68 (1997)).  Thus, "[w]hile mere failure to perform on a contract does not constitute fraud, a promise made without the intention to perform can be actionable fraud." *Richardson v. Reliance Nat'l Indem. Co.*, No. CV 99-02952 CRB, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000) (citations omitted).

It is well-established that a defendant's intent not to perform a promise can be "inferred from its subsequent conduct." *Miller v. Nat'l American Life Ins. Co. of Cal.*, 54 Cal. App. 3d 331, 338 (1976); *Jones v. AIG Risk Mgmt.*, 726 F. Supp. 2d 1049, 1057-58 (N.D. Cal. 2010).  For example, "intent has been inferred from such circumstances as. . . [defendant's] hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform." *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985).  However, allegations of "nonperformance" alone are not enough to prove a defendant's intent to not perform. *Id.*

Here, Plaintiffs' Complaint identifies the who, what, when, where, and how of Defendant's alleged fraud.  *See Vess*, 317 F.3d at 1106; *Backhaut*, 2014 WL 6601776.  Specifically, Plaintiffs allege the following.  In terms of the "who," the participants in the alleged fraud were 7-Eleven and its representatives and managers Austin, Anderson, and Bohala. (Compl. ¶¶ 25-35; Opp'n 6.)  With regard to "what," Defendant's alleged fraud involved:  (1) representing to Plaintiffs that Defendant wanted Plaintiffs to open a "corporate store" and become 50% partners with Defendant (Compl. ¶ 25); (2) orally promising to pay Plaintiffs $300,000 for their goodwill and License (Compl. ¶¶ 27, 45); (3) representing to Plaintiffs that Defendant had paid $17,000 in back rents on Plaintiffs' behalf to Kern (Compl. ¶¶ 36-37, 47); and (4) giving Plaintiffs an allegedly false financial spreadsheet indicating that Defendant was not obligated to pay Plaintiffs $300,000 because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 15-02044 SJO (ASx)    DATE: June 10, 2015

Plaintiffs owed Defendant $218,000 for the costs of Store operation. (Compl. ¶ 35.) As to "when," the alleged misrepresentations occurred between December 2011 and January 2013. (Compl. ¶¶ 25-27, 30, 32, 35-36; Opp'n 5-6.) In terms of the "where," the fraudulent activities took place in Los Angeles, California because Plaintiffs are residents of Los Angeles County, and the numerous telephone conversations took place while Plaintiffs were located in Los Angeles County. (Compl. ¶¶ 1-3; Opp'n 5.) Finally, as to the "how" of the fraud, Plaintiffs allege that Defendant and its representatives made the aforementioned misrepresentations to Plaintiffs over the phone and at an in-person meeting held in December 2011. (*See* Compl. ¶¶ 25, 30; Opp'n 5-6.) Plaintiffs maintain that these representations were false because (1) Defendant never intended to compensate Plaintiffs for their goodwill or License and (2) never paid Kern back rents on behalf of Plaintiffs. (Compl. ¶ 47.) Plaintiffs also allege that Defendant and its representatives knew these representations were false at the time they were made. (Compl. ¶ 48.)

As indicated, a defendant's intent not to perform a promise can be "inferred from its subsequent conduct." *Miller*, 54 Cal. App. 3d at 338. Here, Defendant's intent not to perform on its alleged promises to pay Plaintiffs $300,000 for their goodwill and License may be inferred from Defendant's: (1) representations to Plaintiffs that they could effect the transfer without going through an escrow; (2) failure to disclose additional expenses or costs for which Plaintiffs were allegedly liable until after the franchise transfer; and (3) failure to provide Plaintiffs with copies of documents used to effect the transfer. (*See* Compl. ¶¶ 25-32.) Further, Defendant's intent not to perform on its alleged promise to pay Kern back rents on behalf of Plaintiffs may be inferred from Defendant requesting that Plaintiffs sign a promissory note for the back rents, and collecting on the Note, despite failing to pay Kern in the first place. (Compl. ¶¶ 36-37.)

Based on the foregoing, the Court finds that Plaintiffs' Complaint pleads the particular circumstances of the alleged fraud with sufficient specificity to provide Defendant with notice of the fraudulent conduct alleged. *See Fitzer*, 119 F. Supp. 2d at 17. Thus, the Court **DENIES** the Motion with respect to Plaintiffs' UCL claim of fraud.

b. Breach of Oral Contract

To state a claim for breach of contract, a plaintiff must allege the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages. *See First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001); *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). To be enforceable, "a contract must be sufficiently definite for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 789 (9th Cir. 2012) (citation and internal quotations omitted); *see also Hobbs v. Wells Fargo Bank N.A.*, No. CV 12-04060 RS, 2013 WL 3200612, at *3 (to state a complaint for breach of an oral contract, the complaint must adequately allege "how such an oral contract was formed, the terms thereof, or how it was breached"). "The terms of a contract are reasonably

CASE NO.:  CV 15-02044 SJO (ASx)          DATE: June 10, 2015

certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."  *Sateriale*,  697 F.3d at 789 (citation and quotations omitted).

Here, Plaintiffs allege that in December 2011, the parties formed an oral contract wherein they agreed that Defendant would pay Plaintiffs $300,000 to sell their Store's goodwill and License to John. (Compl. ¶¶ 26-27, 31, 33, 45.)  Plaintiffs further allege that they discussed and settled the payment amount for the Store's goodwill and license at a face-to-face meeting with Bohala and John later that month.  (Compl. ¶¶ 30.)  At the meeting, Plaintiffs performed on the contract by granting Defendant the power to transfer their franchise and signing documents with one of Defendant's field representatives effecting this transfer. (Compl. ¶ 32.)   Plaintiffs claim that Defendant breached the parties' oral contract because Plaintiffs have not received payment from Defendant for the sale of their franchise. (Compl. ¶¶ 51, 53.)  Finally, Plaintiffs were damaged by Defendant's failure to remit compensation for the sale of their franchise.  (Compl. ¶ 54.)

Defendant cites an earlier decision by this Court, *Dillon v. NBCUniversal Media LLC*, No. CV 12-09728 SJO, 2013 WL 3581938, at *8 (C.D. Cal. June 18, 2013), for the proposition that an alleged breach of contract standing **alone** cannot be the basis for a UCL claim. (Mot. 4; Reply 1-2) (emphasis added).  Thus, a plaintiff's unlawful claim fails "to the extent that it is predicated **solely** on [the defendant's] alleged breach of contract."  *Dillon,* 2013 WL 3581938, at *8.  However, California courts have held that "a breach of contract may in fact form the predicate for [UCL] claims, provided it also constitutes conduct that is 'unlawful, or unfair, or fraudulent.'"  *Watson Labs., Inc. v. Rhone-Poulenc Rorer*, 178 F. Supp. 2d 1099,1112 n.12 (C.D. Cal. 2011) (citing *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432 (1988)).  Finally, as indicated above, Plaintiffs have alleged sufficient facts for their fraud sub-claim, which is predicated on an inference that Defendant entered the parties' oral contract with the intent not to perform, to survive Defendant's Motion to Dismiss.

Based on the foregoing, the Court finds that Plaintiffs have stated a claim for breach of contract under the UCL.  Plaintiffs have alleged: (1) the existence of a contract in the form of parties' oral agreement that Defendant would pay Plaintiffs $300,000 in exchange for their Store's goodwill and ABL; (2) performance by Plaintiffs when they transferred the Store's goodwill and ABL to John at Defendant's request; (3) breach by Defendant when it failed to pay for the franchise; and (4) and damages in the form of the loss of the $300,000 payment.  (Compl. ¶¶ 51-54.)  Further, Plaintiffs have sufficiently alleged that Defendant's breach of contract was fraudulent because Defendant's induced Plaintiffs to sell the goodwill and License associated with their Store without the intent to pay Plaintiffs.  (Compl. ¶¶ 45, 49-50.)

Accordingly, the Court **DENIES** the Motion with regard to Plaintiffs' breach of oral contract claim under the UCL.

///

CASE NO.:   CV 15-02044 SJO (ASx)                    DATE:  June 10, 2015

      c.    <u>Conversion</u>

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 543-544 (1996). "Conversion is a strict liability tort" and thus "[t]he foundation of the action rests neither in the knowledge nor the intent of the defendant." *Burlesci v. Peterson*, 68 Cal. App. 4th 1062,1066 (1998). "Money can be the subject of an action for conversion if a specific sum capable of identification is involved." *Farmers Ins. Exch. v. Zerin,* 53 Cal. App. 4th 445, 452 (1997) (citing *Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975)).

Here, Plaintiffs allege that Defendant's conduct caused them to lose not only their Store's goodwill, but the entire franchise and related assets. (Opp'n 9-10.) Defendant argues, among other things, that Plaintiffs' conversion sub-claim must fail because the tort of conversion cannot be predicated on a breach of contract. (Mot. 5.)

The law is clear that "a mere contractual right to payment, without more, does not entitle the obligee to the immediate possession necessary to establish a cause of action for the tort of conversion." *In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999); *Farmers Ins. Exch. v. Zerin,* 53 Cal. App. 4th 445, 452 (1997) ("[A] mere contractual right of payment, without more, will not suffice" in terms of stating a claim for conversion). In this case, Defendant received possession of the Store and ABL through an oral contract with Plaintiffs, and allegedly breached the contract by failing to make payment thereon. (*See generally* Compl.) Further, it is clear that Plaintiffs' sought after remedy for Defendant's alleged conversion is compensation per the parties' oral contract. (*See* Compl. ¶¶ 58.) Because "[an] obligation to pay money may not be enforced by a conversion action," *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. Dist. Ct. App. 1970) (citing *Dawkins v. Nat'l Liberty Life Ins. Co.*, 263 F. Supp. 119, 121; s*ee also Cusano v. Klein,* 280 F. Supp .2d 1035, 1043 (C.D. Cal. 2003), conversion is not the appropriate claim for Plaintiffs to collect the outstanding balance allegedly owed for their franchise. Thus, the conversion claim is **DISMISSED without leave to amend.**[5]

---

[5] When granting a motion to dismiss, the courts are generally required to grant the plaintiff leave to amend, unless amendment would be futile. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted). In determining whether amendment would be futile, the Court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). Because Plaintiffs cannot amend the Complaint to bring a claim for conversion without contradicting their allegations regarding the alleged oral contract between themselves and Defendant, as well as the compensation promised therein, this claim is dismissed without

CASE NO.: CV 15-02044 SJO (ASx)                     DATE: June 10, 2015

        d.      <u>Negligent Interference with Prospective Economic Advantage</u>

To support a cause of action for interference with prospective economic advantage, the following must be established: "the existence of a specific economic relationship between [the plaintiff] and third parties that may economically benefit [plaintiff]; knowledge by [the defendant] of this relationship; intentional acts by [defendant] designed to disrupt the relationship; actual disruption of the relationship; and damages to the [plaintiff]." *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1456 (9th Cir. 1983) (citation omitted); *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 581 (N.D. Cal. 1999). A "hope of future transactions" is not sufficient. *Halton Co. v. Streivor, Inc.*, No. CV 10-00655 WHA, 2010 WL 2077203, at *5 (N.D. Cal. May 21, 2010) (citation and quotation marks omitted).

Here, Defendant argues, among other things, that Plaintiffs' negligent interference claim must fail because Plaintiffs have failed to allege that they had a specific economic relationship with Kern. (Mot. 6; Reply 3.) The Court agrees. Plaintiffs' Complaint lacks any allegations regarding a specific economic relationship between Kern and Plaintiffs (*see generally* Compl.), and the nature of such a relationship, if it existed, is unclear in light of Plaintiffs' eviction from the Property. Accordingly, Defendant's Motion is **GRANTED** with respect to Plaintiffs' negligent interference claim under the UCL. Because Plaintiffs' negligent interference claim fails to due Plaintiffs' failure to allege sufficient facts, dismissal is **with leave to amend**.

        e.      <u>Breach of the Implied Covenant of Good Faith</u>

"Under California law, a claim for breach of this implied covenant is necessarily based on the existence of an underlying contractual relationship, and the essence of the covenant is that neither party to the contract will do anything which would deprive the other of the benefits of the contract." *Milne Emps. Ass'n v. Sun Carriers*, 960 F.2d 1401, 1411 (9th Cir. 1991) (citing *Seaman's Direct Buying Serv., Inc. v. Standard Oil Co. of Cal.*, 36 Cal. 3d 752, 768 (Cal. 1984)); *see also Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992) ("There is no obligation to deal fairly or in good faith absent an existing contract."). The "implied covenant of good faith and fair dealing is limited to assuring compliance with the **express** terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004) (citation omitted).

Here, the express terms of the parties' oral contract required that Defendant pay Plaintiffs $300,000 in exchange for the transfer of their Store's goodwill and License to John, the new franchisee. (Compl. ¶¶ 27, 31.) Further, Plaintiffs allege that Defendant breached the implied duty of good faith and fair dealing by making false promises to Plaintiffs to compensate them for their

---

    leave to amend.

Store's goodwill and License. (Compl. ¶ 67.) Based on the foregoing, the Court finds that Plaintiffs have alleged a specific contractual obligation based on express term of their oral contract with Defendant. *See Pasadena Live*, 114 Cal. App. 4th at 1094.

Accordingly, the Court **DENIES** the Motion as to Plaintiffs' implied covenant claim under the UCL.

      2.      Racial Discrimination Claims

Plaintiffs' second cause of action is for racial discrimination in violation of California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51, *et seq.* and 42 U.S.C. § 1981 ("Section 1981"). (Compl. ¶¶ 69-75.) In general terms, the Unruh Act entitles individuals to full and equal access to public accommodations, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001), and prohibits "unreasonable, arbitrary, or invidious discrimination." *Sunrise Country Club Ass'n. v. Proud*, 190 Cal. App. 3d 377, 380 (1987). Unreasonable, arbitrary, or invidious discrimination is present where the defendant's policy or action "emphasizes irrelevant differences" or "perpetuates [irrational] stereotypes." *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 33, 36 (1985); *see also Pizarro v. Lamb's Players Theatre*, 135 Cal. App. 4th 1171, 1176 (2006). Here, Plaintiffs allege that Defendant discriminated against them as South Asian franchisees. (Compl. ¶¶ 4, 9, 39-43, 71.)

"A policy that is neutral on its face is not actionable under the Unruh Act, even when it has a disproportionate impact on a protected class." *Turner Ass'n of Am. Med. Colls.*, 167 Cal. App. 4th 1401, 1408 (2008). Further, the fact that a business enterprise was "proceed[ing] from a motive of rational self-interest" is not enough to show discrimination. *Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 740, n.9 (1982); *see also, e.g., Reyes v. Atl. Richfield Co.*, 12 F.3d 1464, 1471 (9th Cir. 1993) (finding that the defendant franchisor did not violate the Unruh Act where notices of default were warranted and did not appear to be motivated by racial bias).

Here, Plaintiffs do not dispute that they were in breach of their franchise agreement because they fell behind on their mortgage payments. (*See generally* Compl.; Opp'n.) Nonetheless, they argue that Defendant's racial bias against them as persons of South Asian ancestry also played a part in Defendant's decision to terminate the franchise agreement. (Compl. ¶ 72; Opp'n 13-14.)

Instead of detailing how Defendant intentionally targeted the Plaintiffs, who were at the time defaulting franchisees, Plaintiffs base their purported discrimination claim on allegations copied from a separate lawsuit filed against Defendant in this Court. (*See* Compl. ¶¶ 39-43, 72-74; Mot. 7; [Def.'s] Req. for Judicial Notice in Supp. of [Mot.] 1, Ex. A ("*FOAGLA* Compl."), ECF No. 13.) In both lawsuits, the plaintiffs alleged that Defendant engaged in a practice called "churning," whereby Defendant "improperly attempt[ed] to terminate" its franchise agreements with South Asian franchisees. (*Compare* Compl. ¶ 40, *with FOAGLA* Compl. ¶¶ 38, 62.) As Defendant argues, Plaintiffs' racial discrimination claim "contains no plaintiff-specific facts" or allegations evidencing racial bias against these particular Plaintiffs. (Mot. 7.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 15-02044 SJO (ASx)                    DATE:  June 10, 2015

The bare possibility of discrimination premised on speculation, without any underlying factual basis, is insufficient to state a claim under the Unruh Act.  *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1175 (1991) (plaintiff must "plead and prove intentional discrimination" under the Unruh Act), *superseded by statute on other grounds as noted in Munson v. Del Taco, Inc.,* 46 Cal. 4th 661, 624 (2009).  Accordingly, the Court **GRANTS** Defendant's Motion as to Plaintiffs' Unruh Act claim.  Dismissal is **with leave to amend**.

Like the Unruh Act, Section 1981 prohibits intentional discrimination.  *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982). Here, other than the initial charging allegation where Plaintiffs identify themselves as persons of South Asian descent (Compl. ¶ 4), the Complaint is devoid of any allegation that Defendants intentionally discriminated against Plaintiffs because of their race.  (*See generally* Compl.)  Plaintiffs cryptically allege that Defendant's intent to discriminate against Plaintiffs because of their race was established by Defendant's "pattern of behavior" involving "'churn[ing' or re-sell[ing] franchises owned by South Asian Franchise owners." (Compl. ¶ 39.) However, Plaintiffs have failed to allege facts indicating that Defendant's conduct with regard to their franchise arose from Defendant's pattern of "churning" South Asian franchises rather than Plaintiffs' failure to pay their mortgage.  Because Plaintiffs' racial discrimination claim rests entirely on conclusory allegations without providing necessary details or supporting facts, the Court **GRANTS** the Motion with respect to Plaintiffs' racial discrimination claim.  Dismissal is **with leave to amend**.

III.     RULING

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss.  The Court **GRANTS** the Motion with respect to Plaintiffs' conversion and negligent interference sub-claims, as well as the Unruh Act and Section 1981 claims.  Plaintiffs' conversion claim is **DISMISSED without leave to amend**. Plaintiffs' negligent interference, Unruh Act, and Section 1981 claims are **DISMISSED with leave to amend**.  The Motion is **DENIED** in all other respects.

Plaintiffs have fourteen (14) days from the date of this Order to file a First Amended Complaint. Defendant has ten (10) days thereafter to respond.

IT IS SO ORDERED.